25072. WASHINGTON NATIONAL INSURANCE CO. *v.* DUKES.

Decided April 27, 1936.

*Bryan, Middlebrooks & Carter, Pat Avery, J. Ira Harrelson,* for plaintiff in error.

*Hooper & Hooper,* contra.

Guerry, J. On August 9, 1926, John Dukes was insured by

the Washington National Insurance Company. This contract of insurance provided in part for $10 weekly benefit payments for confinement caused by accident or illness. On November 14, 1933, he was confined to his bed with influenza. On November 15, 1933, the doctor attending Dukes made a report to the insurance company on a form furnished by it, and in accordance with the terms of the policy. This report set out the nature of Duke's illness, his confinement to bed and its probable duration, which was certified to be 10 to 15 days. On November 21, 1933, Dukes executed a receipt to the insurance company, reciting the receipt of $10 as benefit payment from November 15, to November 22, 1933. On November 23, 1933, the doctor attending Dukes made a similar report, and on November 29, 1933, Dukes executed to the insurance company another receipt for $10 covering the period from the 23rd to the 30th of November. On December 1, 1933, another report was submitted by the doctor to the insurance company, and on December 7, 1933, Dukes executed another similar receipt for $10 for the period from December 1, to 8th. It was admitted that on this day the agent of the insurance company paid to Dukes $20, the additional $10 for which no receipt was given being for the next succeeding week, that is, through December 15, 1933. The agent of the insurance company, who had each week attended Dukes and who delivered the payments, and who had on each visit made an inspection report to the insurance company, which set out whether upon inspection the agent had found Dukes confined to his bed, room, or house, and in which he made recommendations as to how many days the company should pay for, marked his report as of December 7, 1933, as final. No further benefit payments were made; and in June, 1934, Dukes filed suit against the insurance company for weekly benefits from December 7 to the date of the filing of the suit. The defendant filed an answer, and on the trial the judge directed the jury to find for the defendant. Dukes appealed to the appellate division of the municipal court, which granted a new trial. To this judgment the insurance company excepted. It is admitted by Dukes that he did not make any further written report to the insurance company after December 1, 1933. The policy provides, in this regard, as follows: "The insured shall not be entitled to any benefits for sickness or accident under this policy unless a certificate on the

company's form by a regularly licensed and practicing physician who is satisfactory to the company, showing the nature of the sickness or injury, shall first be furnished the company or its authorized agents; and if the sickness or accidental disability of the insured shall continue for more than one week, a like certificate must likewise be furnished at the beginning of each week of sickness or accidental disability. No liability for sickness or accidental disability shall begin to accrue under this policy for any week until such a certificate is received as above set forth.

 Under the construction placed upon similar provisions of insurance contracts by the Supreme Court and this court in past cases, the furnishing of the certificates provided for in the above provision is a condition precedent to any liability for any benefits under its terms. In point are the cases of *Jackson* v. *Southern Mutual Life Ins. Co.*, 36 *Ga.* 429; *Graham* v. *Niagara Fire Ins. Co.*, 106 *Ga.* 840 (32 S. E. 579); *Harp* v. *Fireman's Fund Ins. Co.*, 130 *Ga.* 726 (61 S. E. 704, 14 Ann. Cas. 299); *Bailey* v. *First Nat. Fire Ins. Co.*, 18 *Ga. App.* 213 (89 S. E. 80). For the last decision of this court on this point see *Sentinel Fire Ins. Co.* v. *McRoberts,* 50 *Ga. App.* 732 (2) (179 S. E. 256). This seems to be the universal rule. See 7 Cooley's Ins., § 1. However, provisions of this character are in purpose for the benefit of the insurance company, and it may of course waive the provision or a compliance therewith on the part of the insured, either by expressly so declaring or by acts amounting to a waiver. This principle is elementary, and is admitted by all authorities. See 7 Cooley's Ins., 5943, § 11; *Sentinel Fire Ins. Co.* v. *McRoberts,* supra. Therefore, no certificates having been furnished to the insurance company by the insured, in order for any liability for benefits to attach it must be determined that the insurance company by some act waived this requirement as thus contended by insured. The insured does not rely on any express statement of the company waiving the provision requiring certificates to be furnished, but relies on acts of the company which he contends amount, as a matter of law, to an absolute implied waiver. Any acts by or conduct of the company which directly prevent the insured from complying with the conditions of his policy as to notice and proofs of loss, or which induce him to believe that strict compliance will not be required, will operate as a waiver of any default resulting

from such acts or conduct. It thus seems to be beyond question that an absolute implied waiver of the certificates so required by the policy, which are generally known as proofs of loss, results by a denial by the company of liability under the contract of insurance, whether the denial be upon some ground other than the failure to furnish required proofs or upon no specific ground at all. For cases dealing with contracts of insurance similar to that involved here, see *Ætna Life Ins. Co.* v. *Palmer*, 33 *Ga. App.* 522 (126 S. E. 862), conforming to answer to certified questions in 159 *Ga.* 371 (125 S. E. 829) ; *National Life Ins. Co.* v. *Jackson*, 18 *Ga. App.* 494 (89 S. E. 633) ; *Williams* v. *Atlas Assurance Co.*, 22 *Ga. App.* 661 (97 S. E. 91) ; *Central Manufacturers Mutual Ins. Co.* v. *Graham*, 24 *Ga. App.* 199 (99 S. E. 434) ; *Coffee* v. *South Georgia Farmers Fire Ins. Asso.*, 29 *Ga. App.* 685 (116 S. E. 653). In a case involving a contract almost indentical, the Court of Appeals of Missouri held that where the insurer refused to make further weekly payments to the insured on the ground that the insured was no longer disabled, the insurer thereby waived the provisions of the policy requiring the insured to furnish a weekly physician's certificate called for by the policy. Redd *v.* National Life &c. Ins. Co. (Mo. App.), 221 S. W. 397. To the same effect, see Rosenbaum *v.* National Acc. Soc., 170 N. Y. Sup. 27.

It has also been held, where a policy provides that the insured upon becoming disabled is to make and fill out a certificate *to be furnished by the insurer,* that if *upon request* the insurer fails or neglects to furnish the blanks within a reasonable time, or if without request the insured is advised that no further blanks will be furnished him, such action will amount to a waiver of a compliance with such provision. Cases supporting this view are Washburn-Halligan Coffee Co. *v.* Merchants Brick Mutual Fire Ins. Co., 110 Iowa, 423 (81 N. W. 707, 80 Am. St. R. 311) ; Davidson *v.* Guardian Assurance Co., 176 Pa. 525 (35 Atl. 220) ; Searle *v.* Dwelling-House Ins. Co., 152 Mass. 263 (25 N. E. 290) ; Winter *v.* Supreme Lodge, 96 Mo. App. 1 (69 S. W. 662) ; Supreme Lodge *v.* Goldberger, 72 Ill. App. 320; National Masonic Acc. Asso. *v.* Seed, 95 Ill. App. 43. For further cases see 7 Cooley's Ins. 5996-7. The policy in the present case, as already quoted, provides for a "certificate on the company's form." Taking as true the evidence of the plaintiff, (the judge having directed a

verdict for the defendant), it appears that an agent of the insurer paid the insured for a week's benefit in advance, stating that the company would not furnish any more certificates for him to fill out, and further denied any future liability under the contract. Therefore, under the above authorities, the only further question which need be answered is, was this agent a duly authorized agent empowered to bind the insurer, as contended? That he was an agent of the insurer is without question. Only his power under the contract is questioned. He was a field superintendent. It appears that he collected premiums, accepted proofs of loss on which the company actually made benefit payments, made the benefit payments to the insured, made a report to the company upon an "inspection report," in which he stated whether or not upon inspection he found the insured confined to his bed, room, and house, whether the claimant was able to work, whether the claim made was final, and for how many days, if any, he recommended payment. The policy declared that the certificate provided for should be furnished to "the company or its authorized agent." From this alone it appears that he was authorized to accept and deal with the insured with reference to the certificates, which, under respectable authority, authorizes him to bind the company by a refusal to accept proofs or to waive them. 7 Cooley's Ins. 5956-7; *Corporation of Royal Exch. Assur.* v. *Franklin,* 158 *Ga.* 644 (124 S. E. 172, 38 A. L. R. 626). Furthermore it appears that he was the "adjuster" of the company with reference to the plaintiff's claim, with authority to deal with the insured in payment of his claim and a settlement thereof, his reports to the company indicating his efforts "to get him off as soon as possible," and his actual settlement of the claim, in his report to the company, although it showed insured still in bed, to which the company made no objection. In thus dealing with the insured he was the alter ego of the company, and his acts in waiving the proofs of loss were those of the company itself. The fact that the policy provided: "Agents (which term includes managers and field superintendents) are not authorized and have no power to make, alter or discharge contracts, waive forfeitures, or to receive premiums on policies in arrears more than four weeks except for purpose of revival, or to receipt for same in receipt book," would not seem to affect his authority to waive proofs, for at least two

reasons: (1) By the decision of our Supreme Court in 158 *Ga.* 644 (supra) such provisions do not limit the authority of agents to waive conditions to be performed after loss, such as the furnishing of a certificate (see also *Life Ins. Co.* v. *Williams,* 48 *Ga. App.* 10, 21, 172 S. E. 181); and (2) even if this were not so, it appears from the evidence that the insurer, by its conduct, impliedly vested in the agent power to deal with the insured · in reference to his claim, and thus waived any limitation on his authority. Therefore if the jury believe the evidence of plaintiff, it would thus follow as a matter of law that the insurer waived the furnishing of the certificate so provided for in the contract, and that a failure to furnish it would not prevent the insured from recovering the amount sued for.

■ Did the policy lapse for non-payment of premiums? It provides: "In consideration of the payment · of the premium stated in the schedule below on or before the date hereof, and thereafter the payment of a like premium in advance on or before Monday of each week, the Washington National Insurance Company . . does hereby agree," etc. It is further provided that "this policy shall become void if the weekly premium shall not be paid according to the terms hereof." And further: "This policy shall not lapse for non-payment of premiums until the premiums of four Mondays are in arrears; the insured, however, shall not be entitled to sick or accident benefits when premium payments are in arrears more than two Mondays, and the subsequent payment of such arrears shall not entitle the insured to benefits for sickness or disability beginning or occurring during the period of such arrears or during the payment of such arrears." Assuming, but not deciding (as being unnecessary), that the construction placed on these provisions by counsel for the defendant is correct (and this is no intimation that the provision is open to construction), that is, that where insured becomes disabled when the policy is in full force and effect, and thereafter and during the continuance of this disability, he fails to make two weekly premium payments, he is not thereafter entitled to payment of benefits, and that the policy became lapsed upon failure to pay four weekly premiums, yet it is true that if the jury should find the evidence of the plaintiff to be true, from which, as already pointed out, a waiver of proofs would result, and should further find that the insured was continuously

disabled during the period sued for, then insurer would have been indebted to the plaintiff in the sum of $10 before two premiums were in arrears, which, in lieu of paying it to insured and his acceptance thereof, would have paid the premium and would have prevented two premiums from thus being in default; and it being the duty of the insurer thus to apply this benefit, which was not paid to or accepted by the insured, to the payment of the premiums, it would appear that the policy was not out of benefit, nor had it ever become lapsed. See Am. Nat. Ins. Co. *v.* Mooney, 111 Ark. 514 (164 S. W. 276); Pfeiffer *v.* Missouri State Life Ins. Co., 174 Ark. 783 (297 S. W. 847, 54 A. L. R. 600).

■ One other point needs mention. Counsel for the insurance company contends that the plaintiff was not entitled to recover, because he was not attended by a physician at the bedside once a week as required by the terms of the policy. The policy provides, in this regard as follows: "The company will not accept as proof of sickness or accident the certificate of a physician who has not actually attended the insured at his or her bedside, and there must be actual attendance for every certificate filed." The obvious answer to this would be (in view of the fact that there has been a directed verdict for defendant) that by waiving the furnishing of the certificate the insurer thereby waived any requirement in connection therewith. From what has been said we think the appellate division of the municipal court was correct in granting to the plaintiff a new trial.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*