26546. COMMERCIAL CASUALTY INSURANCE COMPANY *v.* MATHEWS.

DECIDED MARCH 10, 1938.

452

*Swift, Pease, Davidson & Swinson,* for plaintiff in error.

*McGee & Elliott,* contra.

SUTTON, J.   1.   Where an accident policy insures "against the effects resulting directly and exclusively of all other causes from bodily injury sustained" during the life of the policy "solely through external, violent, and accidental means," it is necessary, in an action thereon, to show that in the act which preceded the injury alleged to have been sustained by the plaintiff something unforeseen, unexpected, or unusual occurred. "The rule which seems to reconcile the cases involving a construction of this, or a similar clause, in an accident policy of insurance, is that when the facts show that no unforeseen, unexpected, unusual, unintentional, or involuntary muscular effort or exertion occurred in the doing of the act which preceded the injury, the injury can not be regarded as resulting from accidental means; but where the circumstances under which the injury was sustained were such as to call for a severe effort or exertion, in the course of which the insured may have been placed in a position where some unforeseen, unexpected, unusual, unintentional, or involuntary movement produced a physical injury, it is a question of fact for the jury whether the injury was caused by such involuntary strain; in which case the means are accidental." *Fulton* v. *Metropolitan Casualty Insurance Co.,* 19 *Ga. App.* 127, 131 (91 S. E. 228). The petition in the present case alleges that the plaintiff instinctively leaped from steps, where he had been sitting, to assist in supporting a motor and pump, weighing 250 pounds, superimposed on a wooden base or platform but careening at the time, and while being held up above the ground by two others, and that the entire weight was thrown against him, and that because of the awkward position in which he was forced to place himself, with the descending weight of the pump and motor, he sustained a certain described hip injury solely by such involuntary strain.   The allegations were sufficient to make an issue for determination by the jury as to whether or not, after beginning the act of assisting in the support of the motor and pump, something "unforeseen, unexpected, or unusual" occurred which produced an involuntary strain on the part

of the plaintiff and caused his injury by such accidental means. The petition set forth a cause of action, and the court did not err in overruling the demurrer.

2. The defendant set up the defense that in the application, which was attached to and made a part of the insurance contract, the insured made false and material representations, in that to the question, "Are your habits of life correct and temperate, and are you in sound condition mentally and physically?" the insured answered "Yes;" that to the question, "Have you ever had any infirmity, deformity, or disease?" the insured answered "No;" and that he was not entitled to recover, for the further reason that his answer to question 15 conclusively showed that the right to recover would be barred in the event he made a false statement material either to the acceptance of the risk or to the hazard assumed by the company, or in the event it was made with intent to deceive, and that the policy was to be based on the answers made in the application. On the trial the plaintiff admitted that although he had a curvature of the spine he did not so inform the agent who took the application, but he also testified that before the injury he could move freely backward, forward, and sideways in any direction, that his back did not seem to be stiff, and that he had had no trouble with it. There was opinionative evidence from several medical experts that he had a curvature in the lower or dorsal part of the spine, of long duration, and had a fixation or rigidity in such portion of the spine, and that such condition rendered him less capable of performing the act which he undertook. *Held:* Conceding that the answers of the insured were not technically true, still the words "deformity" and "infirmity" in a warranty in an application for insurance must be reasonably interpreted, and will not be so construed as to cover a defective condition which is of no practical disability, but must be construed as meaning a deformity or infirmity of a substantial nature, which apparently in some material degree impairs the physical condition and health of the insured and increases the likelihood of injury against which the insurer issues a policy, and which condition, if known, would probably cause the insurer to refuse the risk. Eastern District Piece Dye Works *v.* Travelers Ins. Co., 234 N. Y. 441 (138 N. E. 401, 26 A. L. R. 1505, and annotations). "The terms 'sound health' or 'good health,' used in a policy, mean that the applicant has no

grave impairment or serious disease and is free from any ailment that seriously affects the general soundness and healthfulness of the system." *National Life & Accident Insurance Co.* v. *Smith,* 34 *Ga. App.* 242 (129 S. E. 113). Such terms "must be considered, in an application for insurance, not in the light of technical definitions, but in the light of the insured's understanding in connection with the terms employed in the examination." Northwestern Mutual Life Ins. Co. *v.* Wiggins, 15 Fed. (2d) 646, 648. "The opinion of an expert witness is competent testimony to be weighed by the jury to aid them in coming to a correct conclusion; but such testimony is not so authoritative that the jury are bound to believe it and to be governed by it. The jury may deal with such testimony as they see fit, giving it credence or not." *Mitchell* v. *State,* 6 *Ga. App.* 554 (65 S. E. 326). Notwithstanding the testimony of the expert witnesses, the jury was authorized to find, in view of the testimony of the plaintiff as to the use of his spine, that the "deformity" or "infirmity" was not so substantial as to be material to the risk, and that in a legal sense his answers in the application were not false. Furthermore, under the evidence the jury was authorized to find that after reaching and taking hold of the base or platform upon which the motor and pump were superimposed, and in attempting to assist others in supporting the weight, he sustained the injury solely by accidental means, which caused him to undergo an involuntary strain after being forced into a position which he did not intend to assume. *Fulton* v. *Metropolitan Casualty Ins. Co.,* supra; United States Mutual Accident Association *v.* Barry, 131 U. S. 100 (9 Sup. Ct. 755, 33 L. ed. 60).

(*a*) Under the evidence the jury was not authorized to find that the insurance company, in electing to have the question of liability determined by the court instead of making payment to the plaintiff, acted in bad faith, and the award of penalty and attorney's fees was not authorized.

(*b*) One ground of the motion for new trial is that the court erred in charging the jury: "I charge you, gentlemen, as a principle of law, in connection with the question of misrepresentation, the plaintiff contends that the company had notice of certain disabilities which the company contends the plaintiff was suffering at the time the policy was issued. The plaintiff contends that the

company knew about that, and was therefore not misled. I charge you that notice to the agent of any matter connected with the agency shall be notice to the principal." It is contended that the charge authorized the jury to find that the defendant had notice of any disability which the plaintiff had at the time of the application, and was contrary to the stipulations in the policy and in the application attached to and made a part of the insurance contract, that the answers were made a basis of the contract, and the plaintiff was estopped from contending that any false representation did not mislead the defendant; and that the charge was erroneous because no waiver was pleaded. *Held:* The application being dated April 1, 1933, the plaintiff having testified that he secured the policy on or about that date, the policy having been introduced in evidence and showing on its face that it bore the printed signatures of its president and of its secretary, reciting that it was countersigned at Atlanta, Georgia, on April 1, 1933, the same date, by its "authorized representative," Joe P. Bryant, and the presumption being that it was speaking the truth, the reasonable inference is that the agent had already been provided with the policy which was to be issued in his discretion, and was thereby vested with the power, not only of soliciting insurance, but of completing the entire contract and acting in all respects as the company itself might do, without any necessity for the agent to send the policy to the company for approval; and consequently the agent's waiver of any stipulation in the application or the policy would be that of the company and binding upon it. This ruling is controlled in principle by *Union Central Life Insurance Co.* v. *Merrell,* 52 *Ga. App.* 831 (184 S. E. 655), and the liability in such a case is recognized in *New York Life Ins. Co.* v. *Patten,* 151 *Ga.* 185, 187 (106 S. E. 183), where it was said: "Where the agent is charged by the company with the duty of acquiring knowledge for the company, or is clothed by the company with the actual or apparent authority to act for the company in the issuance of the policy, express limitations upon the power of such agent will not prevent the application of the general rule that knowledge of the agent as to matters within the general scope of his authority is the knowledge of the principal." The objection that no waiver was pleaded is without merit, inasmuch as the defendant set up the defense of material misrepresentation, and no replication was necessary by the plain-

tiff, and he was entitled to meet such defense on the trial of the case by showing waiver. As applied to the facts of the present case, the charge of the court was not error for any reason assigned.

(c) Although the plaintiff may have informed the agent that he had had some ribs broken when a boy, the principal is not bound by any constructive knowledge as to "infirmity" or "deformity." *Wiley* v. *Rome Insurance Co.*, 12 *Ga. App.* 186 (76 S. E. 1067); *Penn Mutual Life Insurance Co.* v. *Blount,* 165 *Ga.* 193 (140 S. E. 496). But even if it be assumed that there was no waiver as to such condition, recovery would not necessarily be denied, because the question whether there was a material misrepresentation must be determined, as held above, by a consideration of whether or not such disability was a substantial one, in some material degree impairing the physical condition and health of the insured, and increasing the likelihood of injury against which the policy was issued.

(d) The ground of the motion for new trial that the court erred in permitting the plaintiff to testify that he informed the agent that he had had some ribs broken when a boy, and that the agent answered that that was all right, is controlled by the ruling in paragraph 2 (b), supra.

(e) In the absence of a special written request, the court did not err in failing to charge verbatim the provisions of the Code, §§ 56-820, 56-821, it appearing that the court substantially charged the law on the issues made by the pleadings and the evidence.

(f) The contention that the court erred in failing to charge the jury that to entitle the plaintiff to recover it must be shown that the injury sustained was "solely" through external, violent, and accidental means is without merit, inasmuch as the court informed the jury that the plaintiff alleged in his petition that he was injured solely through such means, and that it would be necessary for him to prove by a preponderance of the evidence the material allegations of his petition.

(g) The exception that the court erred in failing to charge the jury that the plaintiff must not only make out his case by a preponderance of the evidence, but that they must believe that it is true, is without merit, the record showing that the court substantially charged that the plaintiff must prove every material allegation by a preponderance of the evidence.

3. The judgment overruling the certiorari, except as to the penalty and attorney's fees, was not error.

*Judgment affirmed. Stephens, P. J., and Felton, J., concur.*